IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL ACTION

SELMER M. SALVESEN

      Plaintiff,

v.

KENNETH R. FEINBERG,
FEINBERG ROZEN, LLP,
GULF COAST CLAIMS FACILITY, and
WILLIAM G. GREEN, JR.

      Defendants.

CASE NO.
**11-CA-002008**
Judge: Winesett, Sherra

_____/

## SUMMONS

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint in this action on Defendant:

          Feinberg Rozen, LLP
          1455 Pennsylvania Avenue, NW, Suite 390
          Washington, DC 20004-1008

      Each Defendant is hereby required to serve written defenses to the complaint on Plaintiffs' attorney, whose name and address is:

          Brian J. Donovan, Esq.
          3102 Seaway Court, Suite 304
          Tampa, FL 33629
          (352)328-7469

within twenty (20) days after service of this summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on Plaintiffs' attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the complaint.

      WITNESS my hand and the seal of the Court on _____**JUN 1 5 2011**_____, 2011.

          CHARLIE GREEN
          Clerk of Circuit Court

          By: _____
                DEPUTY CLERK
                (Seal)

**EXHIBIT**
A

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA                                             CIVIL ACTION

CASE NO: 11-CA-002008

Salvesen, Selmer M
    Plaintiff
vs
Feinberg, Kenneth R et al
    Defendant

_____/

## STANDING ORDER IN CIVIL CASES IN THE TWENTIETH JUDICIAL CIRCUIT

    PURSUANT to Florida Rule of Civil Procedure 1.200(a), Florida Rule of Judicial
Administration 2.545, and Administrative Order 1.13 entered by the Chief Judge of this Circuit,
the parties are ordered to adhere to the following information and procedures applicable to civil
lawsuits:

    1. **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this order
with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of
the Circuit Court with proof of service. The Plaintiff shall pay the appropriate statutory clerk's
fees on copies for each Standing Order issued and attached to the Summons.

    2. **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has
established guidelines for the prompt processing and resolution of civil cases. This Court has
adopted a case management system to help meet those guidelines. In contested cases (other than
foreclosures, involuntary commitment of sexually violent predators and eminent domain cases),
the parties are required to participate in the case management system. The case management
system requires early consultation and cooperation among the parties for the preparation and
submission of an Agreed Case Management Plan, early interaction with a Civil Case Manager
and early involvement by the Court. The Agreed Case Management Plan requires the parties to
identify a case track, confer in a good faith attempt to narrow the matters in controversy, identify
the issues that require direct involvement by the Court, and establish a schedule for addressing
those issues.[1] The Agreed Case Management Plan may be accessed at the Court's website at:
[http://www.ca.cjis20.org/web/main/civil.asp].
    Unless all of the Defendants have been served and have defaulted, an Agreed Case
Management Plan will be submitted to the Civil Case Manager, at the Lee County Justice Center,
1700 Monroe Street, Fort Myers, FL 33901, on or before 150 days from the date of filing of the
initial complaint. If the parties are unable to agree on an Agreed Case Management Plan, a case
management conference will be scheduled by the Court. If a case management conference is
scheduled, attendance by trial counsel and those parties who are not represented by counsel is
mandatory.

---

[1] Case Track options include Expedited, Standard or Complex. Case Tracks have been established in order to
comply with the case disposition standards set forth in Florida Rule of Judicial Administration 2.250(a)(1)(B).

3. **ALTERNATIVE DISPUTE RESOLUTION (ADR).** ADR provides parties with an out-of-court alternative to settling disagreements. The Court requires the parties to participate in ADR prior to trial. Mediation is mandatory unless the parties agree to another form of ADR. Mediation is a conference at which an independent third party attempts to arrange a settlement between the parties.

4. **RULES OF PROFESSIONALISM.** The Twentieth Judicial Circuit has adopted Administrative Order 2.20, which sets forth standards of professional courtesy and conduct for all counsel or pro-se litigants practicing within the Circuit. The Court requires that all familiarize themselves and comply with Administrative Order 2.20. Administrative Order 2.20 may be viewed on the Court's website at: http://www.ca.cjis20.org/web/main/ao_admin.asp

DONE AND ORDERED in Chambers at Fort Myers, Lee County, Florida.

*John S. Carlin (electronically signed)*

**Administrative Circuit Judge**

**\*\*\*\*\*Original on file in the office of the Circuit Court Administrative Judge, Lee County**

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## IN AND FOR LEE COUNTY, FLORIDA
## CIVIL ACTION

SELMER M. SALVESEN

    Plaintiff,

v.

KENNETH R. FEINBERG,
FEINBERG ROZEN, LLP,
GULF COAST CLAIMS FACILITY, and
WILLIAM G. GREEN, JR.

    Defendants.

_____/

11 – CA – 002008
Judge: Winesett, Sherra



FILED LEE CO., FLORIDA
CLERK OF COURTS
2011 JUN 15 PM 12: 04
BY
D.C.

## COMPLAINT

COMES NOW Plaintiff, SELMER M. SALVESEN (hereinafter "Salvesen"), by and through his undersigned attorney, files this action against Defendants KENNETH R. FEINBERG, an individual (hereinafter "Feinberg"); FEINBERG ROZEN, LLP, a District of Columbia limited liability partnership (hereinafter "Feinberg Rozen"); GULF COAST CLAIMS FACILITY, an entity established by Feinberg acting through and as a partner of Feinberg Rozen, doing business in the State of Florida (hereinafter "GCCF"); and WILLIAM G. GREEN, JR., an individual (hereinafter "Green") and alleges as follows:

## NATURE OF ACTION

1. On April 20, 2010, an explosion and fire occurred aboard the mobile offshore drilling unit Deepwater Horizon. On the morning of April 22, 2010, the Deepwater Horizon sank

resulting in a massive oil spill incident. Oil flowed into the Gulf of Mexico unchecked for nearly five months. Millions of barrels of oil were discharged into the Gulf of Mexico and upon adjoining shorelines, causing immense environmental and economic harm to the entire region.

2.  On August 23, 2010, Defendant GCCF, an entity established by Defendant Feinberg acting through and as a partner of Defendant Feinberg Rozen, replaced the claims process which BP had established to fulfill its obligations as a responsible party pursuant to the Oil Pollution Act of 1990 (hereinafter "OPA"). The protocol established by the defendants sets forth the procedure for the submission and resolution by Defendant GCCF of claims by individuals and businesses for costs and damages incurred as a result of the Deepwater Horizon oil spill incident.

3.  All Defendants herein have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly stating the protocol under which Defendant GCCF operates is structured to be compliant with OPA and apply the standards of OPA.

4.  All Defendants herein have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly employing a "Delay, Deny, Defend" strategy against Plaintiff. This strategy, commonly used by unscrupulous insurance companies, is as follows: "Delay payment, starve claimant, and then offer the economically and emotionally-stressed claimant a miniscule percent of all damages to which the claimant is entitled. If the financially ruined claimant rejects the settlement offer, he or she may sue."

5.  Under OPA, claims for damages must be presented first to the responsible party. In the event that a claim for damages is either denied or not paid by the responsible party within 90 days, the claimant may elect to commence an action in court against the responsible party or to present the claim to the Oil Spill Liability Trust Fund (hereinafter "OSLTF").

6. Under OPA, the 90-day period for Defendant GCCF to honor the claim of Plaintiff Salvesen began to run when Plaintiff Salvesen first submitted his claim to BP on July 22, 2010, and cannot be reset by Defendant GCCF. OPA does not allow the responsible party to "re-advertise" a claim through any other entity, for the purposes of "resetting" this period.

7. All Defendants herein have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly delaying payment by informing and requiring Plaintiff Salvesen, who had already submitted a Final Payment claim to BP, the responsible party, to resubmit his Final Payment claim to Defendant GCCF, and wait at least *another* 90 days for Defendant GCCF to not pay his claim before Plaintiff Salvesen could commence an action in court against the responsible party or could present the claim to the OSLTF.

8. All Defendants herein have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly delaying payment by telling Plaintiff "claims will be paid within 90 days after substantiation." Unbeknownst to Plaintiff and most claimants, according to Defendant GCCF, substantiation means "the claim has been received and reviewed by GCCF." This definition of substantiation allows a claim to be received and held "under review" indefinitely by Defendant GCCF. When Defendant GCCF finally "substantiates" the claim, the claimant is told he or she will be paid within 90 days.

9. Defendant Feinberg has misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly using the fear of costly and protracted litigation to coerce Plaintiff Salvesen to accept grossly inadequate settlements from Defendant GCCF. During widely-reported town hall meetings organized to promote GCCF, Defendant Feinberg repeatedly tells victims of the BP oil spill: "The litigation route in court will mean uncertainty, years of delay and a big cut for the

-3-

lawyers." and "I take the position, if I don't find you eligible, no court will find you eligible."

10. Defendants Feinberg and GCCF, on their website, indicate the following in the section titled "Frequently Asked Questions": "To be paid on a Full Review Final Payment Claim, you will have to release and waive any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Spill or to submit any claim for payment to the National Pollution Funds Center, the Coast Guard office responsible for evaluating and approving Oil Pollution Act claims, or in court."

11. Defendants Feinberg and GCCF have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly failing to inform him that: (a) no claimant should receive any less compensation in the GCCF claims process than they are entitled to under OPA; and (b) under OPA, the term "claim" means "a request, made in writing for a *sum certain*, for compensation for damages or removal costs resulting from an oil spill incident" and any acceptance for a lesser amount *shall not* preclude the claimant from pursuing future recovery for unrecovered amounts with the OSLTF or through litigation.

12. Defendant Feinberg, for the purpose of benefiting himself and Defendant Feinberg Rozen and limiting BP's liability, has misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly publicly advising during well-reported town hall meetings, on a number of occasions, potential claimants that the fund which he administers is fully funded in the amount of $20 billion. At the end of 2010, the most the fund would have had in its escrow account would have been $5 billion.

13. As of the date of the filing of this Complaint, approximately 328 days have passed since Plaintiff Salvesen presented a claim for damages to BP.

-4-

14. This case is brought by Plaintiff under the following causes of action: (a) Gross Negligence; (b) Negligence; (c) Negligence Per Se; (d) Fraud; (e) Fraudulent Inducement; (f) Promissory Estoppel; and (g) Unjust Enrichment.

## JURISDICTION AND VENUE

15. This is an action for damages which exceeds fifteen thousand dollars ($15,000.00).

16. Venue in this judicial district is proper under Florida Statute § 48.193 because the tortious acts and injuries alleged in this action were committed in more than one judicial circuit in Florida, including the Twentieth Judicial Circuit in and for Lee County, Florida and Defendants operate, conduct, engage in, or carry on a business or business venture in Florida.

## PARTIES

17. Plaintiff Salvesen, a resident of Lee County, Florida, is an individual and sole proprietor of a business engaged in aquaculture, specifically the growing of farm-raised hard-shell clams. Plaintiff Salvesen grows hard-shell clams on sovereignty submerged land leased from the State of Florida. Plaintiff Salvesen holds the Sovereignty Submerged Land Aquaculture Lease, Florida Department of Agriculture and Consumer Services Lease No. 36-AQ-1077, which is located in an Aquaculture Project Area known as "West of Pine Island," in Pine Island Sound, near St. James City, in Lee County, Florida. Plaintiff Salvesen's principal place of business is located in Lee County at 8384 Villaire Ct., Fort Myers, Florida 33919.

18. Defendant Feinberg is a resident of the District of Colombia and Founder and Managing Partner of Defendant Feinberg Rozen and Founder and Administrator of Defendant GCCF.

-5-

19.  Defendant Feinberg Rozen is a District of Colombia limited liability partnership with its principal place of business in Washington, D.C. and Founder of Defendant GCCF.

20.  Defendant GCCF is an entity established by Defendant Feinberg and Defendant Feinberg Rozen. At all times material herein Defendant GCCF had 13 offices located in the State of Florida including an office located at 4121 E. Tamiami Trail, Naples, Florida  34112.

21.  Defendant Green is a resident of the State of Florida and an "Independent Adjuster - All Lines" licensed by the State of Florida. Defendant Green is "Liaison" to Defendant GCCF and "Overseer" of all seafood claims for Defendant GCCF in the State of Florida.

## BACKGROUND FACTS

22.  At approximately 10 p.m. on April 20, 2010, the U.S. Coast Guard District Eight command center in New Orleans, Louisiana received a report of an explosion and fire aboard the mobile offshore drilling unit Deepwater Horizon. On the morning of April 22, 2010, the Deepwater Horizon sank, resulting in a massive oil spill incident. Oil flowed into the Gulf of Mexico unchecked for months. Ultimately, the "Macondo Well" was finally sealed on September 19, 2010, nearly five months after the blowout began. By that time, millions of barrels of oil had been discharged into the Gulf of Mexico and upon adjoining shorelines, causing immense environmental and economic harm to the entire region.

23.  OPA requires BP Exploration & Production Inc. (hereinafter "BP"), as the designated "responsible party" for the Deepwater Horizon oil spill, to establish a procedure for the payment or settlement of claims for damages resulting from this oil spill incident.

24.  In the initial months after this oil spill incident, BP directly received and paid interim claims arising from the oil spill. During the initial four months, BP contracted with one or more

claims adjusting firms to assist in handling claims.

25. On June 16, 2010, President Obama announced that BP agreed to set aside $20 billion to pay economic damage claims to individuals and businesses affected by the Deepwater Horizon oil spill. President Obama stated, "Another important element is that this $20 billion fund will not be controlled by either BP or by the government. It will be put in a escrow account, administered by an impartial, independent third party."

26. At the request of the White House and BP, Defendant Feinberg, acting through and as Managing Partner of Defendant Feinberg Rozen, established Defendant GCCF to independently administer and where appropriate settle and authorize the payment of certain claims asserted against BP as a result of the explosion at the Deepwater Horizon rig and consequent spillage of oil into the Gulf of Mexico.

27. On August 6, 2010, BP created the Deepwater Horizon Oil Spill Trust. The Trust Agreement provides, "To secure the payment and performance of its obligations to make the contributions to the Trust hereunder, BP hereby agrees to grant, convey, and/or assign to the Trust first priority perfected security interests in production payments pertaining to BP's U.S. oil and natural gas production."

28. The Trust Agreement further provides that BP shall contribute: (a) "THREE BILLION DOLLARS ($3,000,000,000) to the Trust on or about August 9, 2010; (b) an additional TWO BILLION DOLLARS ($2,000,000,000) to the Trust, in one or more installments, during the fourth calendar quarter of 2010 and by no later than December 31, 2010; and (c) an additional ONE BILLION TWO HUNDRED FIFTY MILLION DOLLARS ($1,250,000,000) to the Trust, in one or more installments, during and prior to the end of each

-7-

calendar quarter commencing with the first calendar quarter of 2011 and continuing through the last calendar quarter of 2013."

29. On August 23, 2010, Defendant GCCF, spearheaded by Defendant Feinberg and Defendant Feinberg Rozen, replaced the original BP claims process and commenced performing BP's obligations under OPA with respect to private economic loss claims.

30. The nature of the relationship between BP and Defendant Feinberg and Defendant Feinberg Rozen has been memorialized in a written agreement between Defendant Feinberg Rozen and BP, which was negotiated over a period of several months and was finalized and executed on January 6, 2011. Section 11 of the agreement, titled "Independent Contractor; No Agency," states:

> "It is the express intention of the parties that Feinberg Rozen shall be an independent contractor throughout the Term of this Agreement. Except as otherwise agreed to by the parties, nothing in this Agreement shall in any way be construed to constitute Feinberg Rozen as an agent or representative of BP, and Feinberg Rozen shall otherwise perform the Services hereunder as an independent contractor. The execution of this Agreement shall not be construed to create an attorney-client relationship between BP and Feinberg Rozen, and the provision of Services hereunder shall not constitute, or be otherwise construed to constitute, provision of legal advice from Feinberg Rozen, or any of its partners or employees, to BP."

## I. The BP Claim Process Sequence of Events

31. On July 22, 2010, Plaintiff Salvesen presented a Final Payment claim for damages directly to BP, the responsible party, in the amount of $175,760.00 (BP Claim Number 6866124573019). As required by 33 U.S.C. § 2701(3), the claim was "a request, made in writing for a sum certain, for compensation for damages resulting from an oil spill incident." BP delayed ruling on the merits of Plaintiff Salvesen's claim and informed Plaintiff Salvesen that

-8-

he would have to refile with GCCF on or after August 23, 2010.

## II. The GCCF Claim Process Sequence of Events

32.  At all times material herein, Defendants Feinberg, Feinberg Rozen and GCCF claim the protocols under which Defendant GCCF operates are structured to be compliant with OPA and apply the standards of OPA.

33.  At all times material herein, Defendant Green is the "Liaison" to GCCF who is aware of, who participates in, and who is in charge of implementing Defendants' "Delay, Deny, Defend" strategy in regard to Plaintiff Salvesen's claim.

34.  At all times material herein, Defendant Feinberg publicly advises potential claimants that they do not need to hire a lawyer and will be much better off accepting what he offers rather than going to court.

35.  On August 25, 2010, as demanded by Defendant Feinberg and Defendant GCCF, Plaintiff Salvesen refiled his Final Payment claim, in the amount of $175,760.00, with Defendant GCCF.

36.  On September 15, 2010, Plaintiff Salvesen submitted a revised Final Payment claim to Defendant GCCF.

37.  On September 23, 2010, Defendant GCCF sent Plaintiff Salvesen a letter inquiring as to whether Salvesen intended to file a Final Payment claim (as clearly noted in his claim dated August 25, 2010) or an Emergency Advance Payment claim.

38.  On September 28, 2010, Plaintiff Salvesen sent a fax to Defendant GCCF stating, "I am confirming that my claim.....is for final payment."

39.  On October 23, 2010, Plaintiff Salvesen submitted supplemental information in

-9-

support of his Final Payment claim to Defendant GCCF.

40. On October 29, 2010, Defendant GCCF sent a letter requesting the following additional information from Plaintiff Salvesen in regard to his claim: "(a) a copy of a valid, unexpired Commercial Fishing License issued before April 21, 2010, for the current year or the months for which losses are being claimed; and (b) documents showing gross revenues received by the business from any sales or services, from May, 2010 until the present."

41. On November 2, 2010, Plaintiff Salvesen replied via fax to Defendant GCCF. This fax included a copy of Plaintiff Salvesen's Aquaculture Certificates for 2010 and 2011 and a statement of zero income for the period from May, 2010 to November 2, 2010.

42. On December 4, 2010, Defendant GCCF sent Plaintiff Salvesen its boilerplate denial letter wherein GCCF states, "You submitted a claim to the Gulf Coast Claims Facility ("GCCF") for an Emergency Advance Payment for damages relating to the Deepwater Horizon incident on April 20, 2010. Your submission did not provide sufficient documentation to support your claim and consequently, your request for an Emergency Advance Payment has been denied." As noted above, Plaintiff Salvesen filed a Final Payment claim. Plaintiff Salvesen never filed an Emergency Advance Payment claim. In short, *Defendant GCCF denied payment of a claim which Plaintiff Salvesen never filed.*

43. On December 30, 2010, Plaintiff Salvesen met with Defendant Green in Defendant GCCF's office in Naples, Florida. Defendant Green introduced himself as a "Liaison" to GCCF who had total access to Defendant GCCF's database of claims. Plaintiff Salvesen devoted most of the meeting explaining the process of growing, and the valuation of, hard-shell clams to Defendant Green. Defendant Green scheduled a second meeting for 1300 hrs. on January 6, 2011

-10-

with Plaintiff Salvesen for the purpose of having Plaintiff Salvesen submit an updated claim to Defendant Green for his review.

44. On January 4, 2011, Plaintiff Salvesen submitted a revised Final Payment claim to Defendant GCCF.

45. On January 6, 2011, as scheduled, Plaintiff Salvesen met with Defendant Green in Defendant GCCF's office in Naples, Florida. Defendant Green stated he had "seriously reviewed" the claim Plaintiff Salvesen had previously submitted to Defendant GCCF. This meeting's discussion centered around the impact the BP oil spill had on Florida seafood sales. During this meeting, Defendant Green telephoned Mr. Martin May of the Florida Department of Agriculture and Consumer Services, Marketing Department. Mr. May advised Defendant Green that he had just returned from a meeting in the U.S. Northeast wherein he had learned that "Florida seafood's demand was severely impacted by the perception of oil taint."

46. On January 6, 2011, during this same meeting, Plaintiff Salvesen attempted to present his revised Final Payment claim, dated January 4, 2011, to Defendant Green. Defendant Green refused to accept Plaintiff Salvesen's revised claim unless it was submitted on the revised GCCF claim form and included P&L statements. Plaintiff Salvesen left the meeting with Defendant Green believing that Defendant Green was probing for information to "torpedo" Plaintiff Salvesen's claim rather than to assist Plaintiff Salvesen with the truthful and accurate presentation of his claim to Defendant GCCF.

47. On January 24, 2011, as demanded by the defendants, Plaintiff Salvesen submitted a "Full Review Final Payment Claim" to Defendant GCCF in the amount of $645,760.00. At this point, *186 days* have passed since Plaintiff presented his original claim for damages to BP.

-11-

48. On January 25, 2011, Plaintiff again met Defendant Green. Defendant Green reviewed Plaintiff Salvesen's "Full Review Final Payment Claim" of January 24, 2011. Defendant Green advised Plaintiff Salvesen to "make a few changes" to his claim. During the course of this meeting Plaintiff Salvesen realizes that Defendant GCCF refers any inquiry in regard to Plaintiff Salvesen's claim directly to Defendant Green.

49. On January 26, 2011, Defendant GCCF sent a letter to Plaintiff Salvesen stating in part, "The GCCF is currently developing a formula for calculations of future damages to be used in assessing Final Payment Claims. In the next few weeks, the GCCF will make a final determination regarding its methodology for the calculation of future damages. During this period of consultation and evaluation, the GCCF will not be issuing any Final Payment Offers. Final Payment Claims will be reviewed, on a rolling basis, in the order in which the final payment claims were received by the Facility. If the GCCF determines that your claim requires additional information or documentation you will be contacted and notified of the specific missing documentation that you must provide." As of the date of this letter, *156 days* have passed since Defendant GCCF replaced the claims process which BP had established to fulfill its obligations as a responsible party pursuant to the Oil Pollution Act of 1990.

50. On January 31, 2011, Defendant GCCF sent a letter to Plaintiff Salvesen stating in part, " In order for the GCCF to accurately determine your total damages for all of 2010, if you have not already done so, you must submit documents reflecting your gross earnings as an Individual Claimant or your total revenues and expenses as a Business Claimant from May 1, 2010, through December 31, 2010, or documents proving that you did not receive income or earn revenue for any part of that period. Incomplete records will delay the review of your claim, will

-12-

affect the damages calculation, and may cause your claim to be denied."

51. On February 24, 2011, Plaintiff Salvesen spoke with Defendant Green by phone. During this phone conversation, Defendant Green asked Plaintiff Salvesen to explain "Best Management Practices" in a tone which unjustifiably questioned Plaintiff Salvesen's knowledge of the subject.

52. On March 10, 2011, Plaintiff Salvesen and a group of other Pine Island clam farmers met with Defendant Green at the Pine Island library.

53. On or about March 11, 2011, Defendant GCCF appoints Defendant Green as the "Overseer of all seafood claims in the State of Florida."

54. On March 16, 2011, Defendant GCCF sent a Deficiency Letter to Plaintiff Salvesen requesting additional information in regard to his claim.

55. On March 21, 2011, Plaintiff Salvesen sent GCCF his monthly P&L statements for the period January 1, 2008 through December 31, 2010. A significant amount of this information had been previously submitted to Defendant GCCF by Plaintiff Salvesen.

56. On March 22, 2011, Plaintiff Salvesen submitted a revised Full Review Final Payment Claim via FedEx to Defendant Green at Defendant GCCF's Clearwater, Florida office. Plaintiff Salvesen had mistakenly dated this claim March 28, 2011. The amount claimed in the revised Full Review Final Payment Claim, dated March 28, 2011, is $737,656.00.

57. On March 23, 2011, Defendant Green phones Plaintiff Salvesen to confirm his receipt of the revised Full Review Final Payment Claim.

58. On March 29, 2011, Plaintiff Salvesen phones Defendant Green. Defendant Green advises Salvesen that the claim is "OK" and that Defendant Green will submit it to GCCF.

-13-

59. On April 2, 2011, Defendant Green phones Plaintiff Salvesen and states he is training accountants to specifically handle claims of clam farmers.

60. On April 2, 2011, during the same telephone conversation with Defendant Green, Defendant Green informs Plaintiff Salvesen inasmuch as Salvesen's claim is being "studied as a training example" he believes that Salvesen's claim will be settled "quickly."

61. On April 22, 2011, Defendant GCCF denies payment of Plaintiff Salvesen's Full Review Final Payment Claim. Defendant GCCF's Denial Letter states, in part, "We have reviewed all the materials that you submitted and determined that you have not provided documents sufficient to establish that your financial loss occurred as a result of the Oil Spill."

62. As a direct result of Defendants' "Delay, Deny, Defend" strategy, after approximately 10 years of operation Plaintiff Salvesen, at the age of 73, has been forced to close his business and drastically adjust his family's lifestyle. Moreover, given that the terms of the Sovereignty Submerged Land Aquaculture Lease ("SSLAL") require a leaseholder to plant a minimum of 100,000 clam seed per acre per year to fulfill his or her agreement, Plaintiff Salvesen will also be forced to relinquish the SSLAL which he had waited approximately nine years to be granted.

63. On July 22, 2010, Plaintiff Salvesen had estimated the extent of damages resulting from the BP oil spill to be $175,760.00. As a direct result of Defendants' "Delay, Deny, Defend" strategy, approximately 328 days have passed since Plaintiff Salvesen presented a claim for damages to BP. As of the date of the filing of this Complaint, Plaintiff Salvesen now estimates the extent of damages *directly resulting from Defendants' "Delay, Deny, Defend" strategy* to be approximately $1,713,000.00.

-14-

### III. Defendants, Without Any Legal Authority For Doing So, Circumvent Many of the Rights Provided to Plaintiff Under OPA

64. Plaintiff Salvesen refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

65. At all times material herein, Defendant Feinberg publicly advises potential claimants that they do not need to hire a lawyer and will be much better off accepting what he offers rather than going to court.

66. At all times material herein, Defendants Feinberg, Feinberg Rozen and GCCF claim the protocols under which Defendant GCCF operates are structured to be compliant with OPA and apply the standards of OPA.

67. At all times material herein, Defendant Green informs Plaintiff Salvesen that since Salvesen's claim is being "studied as a training example" he believes that Salvesen's claim will be settled "quickly."

68. At all times material herein, Defendant Green is the "Liaison" to GCCF who is aware of, who participates in, and who is in charge of implementing Defendants' "Delay, Deny, Defend" strategy in regard to Plaintiff Salvesen's claim.

69. Defendant Feinberg, for the purpose of benefiting himself and Defendant Feinberg Rozen and limiting BP's liability, has misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly publicly advising during well-reported town hall meetings, on a number of occasions, potential claimants that they do not need to hire a lawyer and will be much better off accepting what he offers rather than going to court.

70. All Defendants herein, for the purpose of benefiting themselves and limiting BP's

-15-

liability, have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly stating the protocol under which Defendant GCCF operates is structured to be compliant with OPA and apply the standards of OPA.

## A. Proximate Causation

71. Defendant GCCF's Protocol states, "The GCCF will only pay for harm or damage that is proximately caused by the Spill. The GCCF will take into account, among other things, geographic proximity, nature of industry, and dependence upon injured natural resources."

72. OPA is a strict liability statute. In order to recover damages, a claimant merely needs to show that his or her damages "resulted from" the oil spill. OPA states, "The responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages *that result from* such incident." See 33 U.S.C. § 2702(a)

73. All Defendants herein have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly requiring that a claimant has the increased burden of proving "proximate causation" between his or her damages and the Deepwater Horizon oil spill incident.

74. All Defendants herein have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly paying for damages based on geographic proximity and nature of industry.

## B. Single Emergency Advance Payment

75. Defendant GCCF's Protocol provides, "Emergency Advance Payment applications may be submitted during the period August 23 – November 23, 2010. After that date,

-16-

applications for Emergency Advance Payments will no longer be accepted."

76. A single six-month emergency advance payment for lost income is in violation of OPA. Moreover, the lack of a procedure for the payment or settlement of claims for interim, short-term damages beyond 90 days, as required by 33 U.S.C. § 2705, is also in violation of OPA.

77. OPA specifically provides for interim partial payments. "The responsible party shall establish a procedure for the payment or settlement of claims for interim, short-term damages. Payment or settlement of a claim for interim, short-term damages representing less than the full amount of damages to which the claimant ultimately may be entitled *shall not* preclude recovery by the claimant for damages not reflected in the paid or settled partial claim." See 33 U.S.C. § 2705(a).

78. The fact that a single payment does not preclude recovery by the claimant for future damages demonstrates that the legislative intent of Congress was for the responsible party to pay a series of partial claims in order to ensure that victims of the oil spill are fully compensated. Each of these partial claims would be paid after the date on which the claimant discovers damages resulting from the oil spill.

79. All Defendants herein have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly offering Plaintiff a single six-month emergency advance payment for lost income or profits.

80. All Defendants herein have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly failing to provide a procedure for the payment or settlement of claims for interim, short-term damages beyond 90 days.

## C. Single Final Settlement

81. Defendant GCCF's Protocol, in violation of OPA, provides for a single final settlement payment.

82. OPA provides: (a) "Payment or settlement of a claim for interim, short-term damages representing less than the full amount of damages to which the claimant ultimately may be entitled *shall not* preclude recovery by the claimant for damages not reflected in the paid or settled partial claim." See 33 U.S.C. § 2705(a); and (b) Any person, including the [Oil Spill Liability Trust] Fund, who pays compensation pursuant to OPA to any claimant for damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law. Moreover, payment of such a claim *shall not* foreclose a claimant's right to recovery of all damages to which the claimant otherwise is entitled under OPA or under any other law. See 33 U.S.C. § 2715(b)(2)

83. All Defendants herein have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly offering Plaintiff a single final settlement payment.

## D. Period of Limitations

84. Defendants fraudulently, recklessly, negligently and/or knowingly have misled Plaintiff by stating that no claim may be submitted to the GCCF "more than three years after the date the Protocol becomes operative."

85. Under OPA, an action for damages shall be barred unless the action is brought within three years after the date on which the loss and the connection of the loss with the discharge in question are reasonably discoverable with the exercise of due care. 33 U.S.C. § 2717(f)(1)(A)

-18-

86.  The damages suffered by Plaintiff Salvesen and other victims of this oil spill will be enormous and on-going. The livelihoods of all persons whose businesses rely on the natural resources of the Gulf Coast are at risk. Recreational deep sea fishing boat operators, commercial fishermen, clam farmers, oyster harvesters, shrimpers, and businesses involved, directly or indirectly, in processing and packaging for the seafood industry will experience the end of a way of life that, in many cases, has been passed down from one generation to the next.

87.  It is too early for Plaintiff Salvesen to calculate his exact economic damages. Defendants' "take it or leave it" Period of Limitations and the final settlement offer are unconscionable, requiring financially-stressed Plaintiffs to file a claim before Plaintiffs know, and are able to corroborate, the full extent of the damages incurred as a result of the oil spill and as a result of Defendants' "Delay, Deny, Defend" strategy.

### E. Intentionally Misleading Claims Procedure

88.  Under OPA, claims for damages must be presented first to the responsible party. 33 U.S.C. § 2713(a). The term "claim" means "a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an oil spill incident." 33 U.S.C. § 2701(3) In the event that a claim for damages is not paid by the responsible party within 90 days, the claimant may elect to commence an action in court against the responsible party or to present the claim to the Oil Spill Liability Trust Fund. 33 U.S.C. § 2713(c)

89.  Defendants fraudulently, recklessly, negligently and/or knowingly failed to inform Plaintiff that in the event that a claim for damages is not paid by Defendant GCCF within 90 days, Plaintiff may elect to commence an action in court against the responsible party or to

-19-

present the claim to the OSLTF.

90. Defendants fraudulently, recklessly, negligently and/or knowingly: (a) failed to acknowledge that the filing of a claim with GCCF satisfies 33 U.S.C. § 2713(a); and (b) failed to inform Plaintiff as to when the 90-day OPA period for payment starts. Defendants' Protocol vaguely states, "Whether or not a claim has been presented shall be governed by OPA and applicable law."

91. Moreover, Defendants required Plaintiff Salvesen, who had a pending claim with BP, to refile his claim with Defendant GCCF on a new 18-page claim form. Defendants fraudulently, recklessly, negligently and/or knowingly did not advise Plaintiff Salvesen that his refiling would restart the 90-day OPA period.

92. Defendants fraudulently, recklessly, negligently and/or knowingly did not advise Plaintiff what would happen if Plaintiff failed to refile his claim.

93. Defendants fraudulently, recklessly, negligently and/or knowingly have misled Plaintiff through the employment of an intentionally misleading and constantly changing claim process.

**F. Interest on the Amount Paid**

94. Under OPA, 33 U.S.C. § 2705(a), the responsible party or the responsible party's guarantor is liable to a claimant for interest on the amount paid in satisfaction of a claim. The period for which interest shall be paid is the period beginning on the 30th day following the date on which the claim is presented to the responsible party or guarantor and ending on the date on which the claim is paid.

-20-

95.  All Defendants herein fraudulently, recklessly, negligently and/or knowingly, in violation of OPA, misled Plaintiff by refusing to agree to pay interest on the amount paid in satisfaction of the claim of Plaintiff Salvesen.

### G. Waiver of Right to Sue

96.  OPA defines a "claim" as "a request, made in writing, *for a sum certain*, for compensation for damages or removal costs resulting from an incident." 33 U.S.C. § 2701(3)

97.  OPA further provides: (a) "Payment or settlement of a claim for interim, short-term damages representing less than the full amount of damages to which the claimant ultimately may be entitled *shall not* preclude recovery by the claimant for damages not reflected in the paid or settled partial claim." 33 U.S.C. § 2705(a); and (b) Any person, including the [Oil Spill Liability Trust] Fund, who pays compensation pursuant to OPA to any claimant for damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law. Moreover, payment of such a claim *shall not* foreclose a claimant's right to recovery of all damages to which the claimant otherwise is entitled under OPA or under any other law. 33 U.S.C. § 2715(b)(2).

98.  Defendants Feinberg and GCCF, on their website, indicate the following in the section titled "Frequently Asked Questions": "To be paid on a Full Review Final Payment Claim, you will have to release and waive any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Spill or to submit any claim for payment to the National Pollution Funds Center, the Coast Guard office responsible for evaluating and approving Oil Pollution Act claims, or in court."

99. Defendants Feinberg, Green and GCCF have misled Plaintiff Salvesen by fraudulently, recklessly, negligently and/or knowingly failing to inform him that: (a) no claimant should receive any less compensation in the GCCF claims process than they are entitled to under the OPA; and (b) under OPA, the term "claim" means "a request, made in writing for a *sum certain*, for compensation for damages or removal costs resulting from an oil spill incident" and any acceptance for a lesser amount *shall not* preclude the claimant from pursuing future recovery for unrecovered amounts with the OSLTF or through litigation.

### H. The Intentional and Systematic Delay of Payment of Legitimate Claims

100. Under OPA, claims for damages must be presented first to the responsible party. In the event that a claim for damages is either denied or not paid by the responsible party within 90 days, the claimant may elect to commence an action in court against the responsible party or to present the claim to the OSLTF.

101. All Defendants herein have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly delaying payment by telling Plaintiff "claims will be paid within 90 days after substantiation." Unbeknownst to Plaintiff Salvesen and most claimants, according to Defendant GCCF, substantiation means "the claim has been received and reviewed by GCCF." This definition of substantiation allows a claim to be received and held "under review" indefinitely by Defendant GCCF. When Defendant GCCF finally "substantiates" the claim, the claimant is told he or she will be paid within 90 days.

102. Defendants Feinberg and GCCF have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly delaying payment by appointing Defendant Green as the "Overseer

of all seafood claims in the State of Florida" and thereafter having Defendant Green advise Plaintiff Salvesen that since his claim is being "studied as a training example" by Defendants, Salvesen's claim will be settled "quickly." In reality, Defendant Green is the "Liaison" to GCCF who is aware of, who participates in, and who is in charge of implementing Defendants' "Delay, Deny, Defend" strategy in regard to Plaintiff Salvesen's claim.

### IV. Use of the Fear of Costly and Protracted Litigation to Coerce Plaintiff

103.  At all times material herein, Defendants Feinberg, Feinberg Rozen and GCCF claim the protocols under which Defendant GCCF operates are structured to be compliant with OPA and apply the standards of OPA.

104.  At all times material herein, Defendant Feinberg publicly advises potential claimants that they do not need to hire a lawyer and will be much better off accepting what he offers rather than going to court.

105.  Defendant Feinberg has misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly using the fear of costly and protracted litigation to coerce Plaintiff to accept grossly inadequate settlements from Defendant GCCF.  During widely-reported town hall meetings organized to promote GCCF, Defendant Feinberg repeatedly tells victims of the BP oil spill:

(a) "The litigation route in court will mean uncertainty, years of delay and a big cut for the lawyers;"

(b) "I am determined to come up with a system that will be more generous, more beneficial, than if you go and file a lawsuit;"

-23-

(c) "It is not in your interest to tie up you and the courts in years of uncertain protracted litigation when there is an alternative that has been created;" and

(d) "I take the position, if I don't find you eligible, no court will find you eligible."

106.  Defendants Feinberg and Green have misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly failing to affirmatively state that punitive damages (and/or additional damages), which may be available in litigation, are not being recognized or paid by Defendant GCCF.

### V. The Deepwater Horizon Oil Spill Trust Fund

107.  At all times material herein, Defendant Feinberg has referred to the Deepwater Horizon Oil Spill Trust Fund as the "$20 Billion Fund."

108.  The Trust Agreement for the Deepwater Horizon Oil Spill Trust Fund provides that BP shall contribute $5 billion in 2010, $5 billion in 2011, $5 billion in 2012 and $5 billion in 2013. The Trust Agreement further provides, "To secure the payment and performance of its obligations to make the contributions to the Trust hereunder, BP hereby agrees to grant, convey, and/or assign to the Trust first priority perfected security interests in production payments pertaining to BP's U.S. oil and natural gas production."

109.  The fact that future production payments pertaining to BP's U.S. oil and natural gas production, rather than hard U.S. assets, are being used as collateral by BP means that the "$20 Billion Fund" does not currently exist and that there is no guarantee that BP will contribute $20 billion to the Fund by the end of 2013.

110.  Defendant Feinberg, for the purpose of benefiting himself and Defendant Feinberg

-24-

Rozen and limiting BP's liability, has misled Plaintiff by fraudulently, recklessly, negligently and/or knowingly publicly advising during well-reported town hall meetings, on a number of occasions, potential claimants that the fund which he administers is fully funded in the amount of $20 billion. At the end of 2010, the most the fund would have had in its escrow account would have been $5 billion.

## COUNT I
## GROSS NEGLIGENCE

111. Plaintiff Salvesen refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

112. Defendants owed a duty to Plaintiff to exercise reasonable care in regard to the operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services.

113. Defendants had a heightened duty of care to Plaintiff because of the unprecedented environmental and economic harm resulting from the millions of barrels of oil that had been discharged into the Gulf of Mexico and upon adjoining shorelines by the Deepwater Horizon oil spill incident. The damages suffered by Plaintiff Salvesen and other victims of this oil spill incident will be enormous and on-going. The livelihoods of all persons, including Plaintiff, whose businesses rely on the natural resources of the Gulf Coast are at risk. Recreational deep sea fishing boat operators, commercial fishermen, clam farmers, oyster harvesters, shrimpers, and businesses involved, directly or indirectly, in processing and packaging for the seafood industry will experience the end of a way of life that, in many cases, has been passed down from one generation to the next.

-25-

114. Defendants breached their legal duty to Plaintiff, failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for the business and livelihood of Plaintiff in their negligent operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services in the following manner:

(1) Inadequate Claim Processing - On August 23, 2010, Defendant GCCF failed to verify the claim which Plaintiff Salvesen had filed with BP on July 22, 2010. Defendant GCCF failed to properly receive the file of Plaintiff Salvesen from its predecessor, BP Claims Processing.

(2) Inadequate Claim Investigation - Defendant GCCF failed to even investigate the claim which Plaintiff Salvesen refiled with GCCF on August 25, 2010. Defendant GCCF failed to appraise the amount of loss claimed by Plaintiff Salvesen.

(3) Delay in Payment - Defendant GCCF employed a "Delay, Deny, Defend" strategy against Plaintiff Salvesen by delaying payment in the following manner:

(a) Defendant GCCF required Plaintiff Salvesen, who had already submitted a Final Payment claim to BP, the responsible party, to resubmit its Final Payment claim to Defendant GCCF, and wait at least *another* 90 days for Defendant GCCF to not pay its claim before Plaintiff could commence an action in court against the responsible party or could present the claim to the OSLTF; and

(b) Defendant GCCF told Plaintiff "claims will be paid within 90 days after substantiation." Unbeknownst to Plaintiff Salvesen and most claimants, according to Defendant GCCF, substantiation means "the claim has been received and reviewed by GCCF." This definition of substantiation allows a claim to be received and held "under review" indefinitely by Defendant

-26-

GCCF. When Defendant GCCF finally "substantiates" the claim, the claimant is told he or she will be paid within 90 days.

115. As of the date of the filing of this Complaint, approximately 328 days have passed since Plaintiff Salvesen presented a claim for damages to BP.

(4) Unreasonable Denial of Claim - In this case, payment delayed is payment denied. Until recently, when Defendant GCCF denied a claim, it sent the following boilerplate denial letter, which violates OPA, stating that the claimant's request for payment has been denied for the following reasons:

> "In determining eligibility, the GCCF applies the same factors to every claim. The GCCF takes into account evidence of the connection between the asserted loss and the Spill, the nature of the claimant's job or business, and the extent to which the claimant's job or business is dependent upon injured property or natural resources. In weighing these factors, the GCCF has determined that you did not demonstrate that you lost profits or income as a direct result of the Spill."

Defendant GCCF's new and improved Denial Letter to Plaintiff Salvesen, dated April 22, 2011, states, in part, "To receive..........a Final Payment, each claimant must demonstrate both actual financial loss and a connection between that loss and the Oil Spill. We have reviewed all the materials that you submitted and determined that you have not provided documents sufficient to establish that your financial loss occurred as a result of the Oil Spill." Although not as blatant, this new form of Denial Letter by Defendant GCCF is also in clear violation of OPA.

116. Defendants knew or should have known that their wanton or reckless conduct would foreseeably result in the financial ruin of Plaintiff Salvesen thereby causing irreversible damage to the health and the economic interests of Plaintiff Salvesen and his family.

117. As a direct and proximate result of Defendants' wanton or reckless conduct, Plaintiff Salvesen has suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other economic loss.

118. Defendants' wanton or reckless conduct, as described herein, constitutes such a conscious disregard or indifference to the rights and life of Plaintiff Salvesen that it entitles Plaintiff Salvesen to punitive damages.

## COUNT II
## NEGLIGENCE

119. Plaintiff Salvesen refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

120. Defendants owed a duty to Plaintiff Salvesen to exercise reasonable care in regard to the operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services.

121. Defendants knew or should have known that their conduct would foreseeably result in the financial ruin of Plaintiff Salvesen thereby causing irreversible damage to the health and the economic interests of Plaintiff Salvesen and his family.

122. Defendants breached their legal duty to Plaintiff Salvesen and failed to exercise reasonable care in the following manner:

(1) Inadequate Claim Processing - On August 23, 2010, Defendant GCCF failed to verify the claim which Plaintiff Salvesen had filed with BP on July 22, 2010. Defendant GCCF failed to properly receive the file of Plaintiff Salvesen from its predecessor, BP Claims Processing.

-28-

(2) Inadequate Claim Investigation - Defendant GCCF failed to even investigate the claim which Plaintiff Salvesen refiled with GCCF on August 25, 2010. Defendant GCCF failed to appraise the amount of loss claimed by Plaintiff Salvesen.

(3) Delay in Payment - Defendant GCCF employed a "Delay, Deny, Defend" strategy against Plaintiff Salvesen by delaying payment in the following manner:

(a) Defendant GCCF required Plaintiff Salvesen, who had already submitted a Final Payment claim to BP, the responsible party, to resubmit his Final Payment claim to Defendant GCCF, and wait at least *another* 90 days for Defendant GCCF to not pay its claim before Plaintiff could commence an action in court against the responsible party or could present the claim to the OSLTF; and

(b) Defendant GCCF told Plaintiff "claims will be paid within 90 days after substantiation." Unbeknownst to Plaintiff Salvesen and most claimants, according to Defendant GCCF, substantiation means "the claim has been received and reviewed by GCCF." This definition of substantiation allows a claim to be received and held "under review" indefinitely by Defendant GCCF. When Defendant GCCF finally "substantiates" the claim, the claimant is told he or she will be paid within 90 days.

123. As of the date of the filing of this Complaint, approximately 328 days have passed since Plaintiff Salvesen presented a claim for damages to BP.

(4) Unreasonable Denial of Claim - In this case, payment delayed is payment denied. Until recently, when Defendant GCCF denied a claim, it sent the following boilerplate denial letter, which violates OPA, stating that the claimant's request for payment has been denied for the following reasons:

-29-

"In determining eligibility, the GCCF applies the same factors to every claim. The GCCF takes into account evidence of the connection between the asserted loss and the Spill, the nature of the claimant's job or business, and the extent to which the claimant's job or business is dependent upon injured property or natural resources. In weighing these factors, the GCCF has determined that you did not demonstrate that you lost profits or income as a direct result of the Spill."

Defendant GCCF's new and improved Denial Letter to Plaintiff Salvesen, dated April 22, 2011, states, in part, "To receive..........a Final Payment, each claimant must demonstrate both actual financial loss and a connection between that loss and the Oil Spill. We have reviewed all the materials that you submitted and determined that you have not provided documents sufficient to establish that your financial loss occurred as a result of the Oil Spill." Although not as blatant, this new form of Denial Letter by Defendant GCCF is also in clear violation of OPA.

124. As a direct and proximate result of Defendants' negligent conduct, Plaintiff Salvesen has suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other economic loss.

125. Defendants are further liable under the doctrine of *res ipsa loquitor* because the loss of profit, loss of business reputation, loss of livelihood, loss of income, and other health and economic loss by Plaintiff Salvesen could not have occurred in the absence of the negligence of Defendants.

## COUNT III
## NEGLIGENCE PER SE

126. Plaintiff Salvesen refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

-30-

127. Defendants' conduct with regard to the operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services is governed by the Oil Pollution Act of 1990.

128. The Oil Pollution Act of 1990 creates statutory standards that are intended to protect and benefit Plaintiff.

129. Defendants' violations of these statutory standards constitute negligence *per se* under Florida law.

130. Defendants' violations of these statutory standards proximately caused Plaintiff's injuries, warranting compensatory and punitive damages.

**COUNT IV**
**FRAUD**

131. Plaintiff Salvesen refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

132. Defendants, knowing the representations were false at the time the representations were made, made the following false representations of fact to Plaintiff:

(1) Since his claim is being "studied as a training example" by Defendants, Salvesen's claim will be settled "quickly;"

(2) The protocol under which Defendant GCCF operates is structured to be compliant with OPA and apply the standards of OPA;

(3) "Each Emergency Advance Payment application will be evaluated preliminarily within 24 hours of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information submitted by the

Claimant;"

(4) "Complex business claims submitted for an Emergency Advance Payment will be evaluated preliminarily within 7 days of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information submitted by the Claimant;"

(5) "Upon a determination that the Claimant is eligible for an Emergency Advance Payment, a payment will be authorized within 24 hours;"

(6) Claims will be paid within 90 days after "substantiation;"

(7) Potential claimants do not need to hire a lawyer and will be much better off accepting what Defendant Feinberg offers rather than going to court;

(8) "The litigation route in court will mean uncertainty, years of delay and a big cut for the lawyers;"

(9) "I am determined to come up with a system that will be more generous, more beneficial, than if you go and file a lawsuit;"

(10) "It is not in your interest to tie up you and the courts in years of uncertain protracted litigation when there is an alternative that has been created;"

(11) "I take the position, if I don't find you eligible, no court will find you eligible;" and

(12) Defendants referred to the Deepwater Horizon Oil Spill Trust Fund as the "$20 Billion Fund." At the end of 2010, the most the fund would have had in its escrow account would have been $5 billion.

133. Defendants made these false representations for the purpose of inducing Plaintiff to act in reliance on the false representations.

-32-

134. Plaintiff Salvesen relied on Defendants' representations rather than elect to commence an action in court against the responsible party or to present the claim to the OSLTF.

135. Plaintiff Salvesen's reliance, which was reasonable and foreseeable, resulted in the following damage to Plaintiff: Plaintiff Salvesen has suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other health and economic loss.

## COUNT V
## FRAUDULENT INDUCEMENT

136. Plaintiff Salvesen refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

137. Defendants made the following false statements of material fact to Plaintiff:

(1) Since his claim is being "studied as a training example" by Defendants, Salvesen's claim will be settled "quickly;"

(2) The protocol under which Defendant GCCF operates is structured to be compliant with OPA and apply the standards of OPA;

(3) "Each Emergency Advance Payment application will be evaluated preliminarily within 24 hours of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information submitted by the Claimant;"

(4) "Complex business claims submitted for an Emergency Advance Payment will be evaluated preliminarily within 7 days of receipt of the completed form and supporting documentation to determine whether an Emergency Advance Payment is appropriate based on the information

-33-

submitted by the Claimant;"

(5) "Upon a determination that the Claimant is eligible for an Emergency Advance Payment, a payment will be authorized within 24 hours;"

(6) Claims will be paid within 90 days after "substantiation;"

(7) Potential claimants do not need to hire a lawyer and will be much better off accepting what Defendant Feinberg offers rather than going to court;

(8) "The litigation route in court will mean uncertainty, years of delay and a big cut for the lawyers;"

(9) "I am determined to come up with a system that will be more generous, more beneficial, than if you go and file a lawsuit;"

(10) "It is not in your interest to tie up you and the courts in years of uncertain protracted litigation when there is an alternative that has been created;"

(11) "I take the position, if I don't find you eligible, no court will find you eligible;"

(12) Defendants referred to the Deepwater Horizon Oil Spill Trust Fund as the "$20 Billion Fund." At the end of 2010, the most the fund would have had in its escrow account would have been $5 billion.

138.  Defendants knew or should have known these statements were false.

139.  Defendants made these false statements of material fact for the purpose of either inducing Plaintiff Salvesen to enter into a settlement agreement with Defendant GCCF or furthering their "Delay, Deny, Defend" strategy;

140.  Plaintiff Salvesen justifiably relied upon these false statements of material fact.

141.  Reliance on these false statements of material fact did, in fact, induce Plaintiff

-34-

Salvesen to refrain from commencing an action in court against the responsible party or

presenting the claim to the OSLTF which proximately caused the following injury to Plaintiff:

Due to the fact that Defendant GCCF denied Plaintiff Salvesen's claim after 274 days had

passed since Plaintiff Salvesen presented a claim for damages to BP, Plaintiff Salvesen has

suffered legal injury and damages, in an amount to be proven at trial, including, but not limited

to, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other health

and economic loss.

## COUNT VI
## PROMISSORY ESTOPPEL

142. Plaintiff Salvesen refers to and incorporates by reference as though fully set forth

herein each and every foregoing paragraph of this Complaint.

143. Defendants made the following representations as to material facts that are contrary

to Defendants' current representations:

(1) On or about August 23, 2010, Defendant GCCF, on its website, stated, "Each Emergency

Advance Payment application will be evaluated preliminarily within 24 hours of receipt of the

completed form and supporting documentation to determine whether an Emergency Advance

Payment is appropriate based on the information submitted by the Claimant;"

(2) On or about August 23, 2010, Defendant GCCF, on its website, stated, "Complex business

claims submitted for an Emergency Advance Payment will be evaluated preliminarily within 7

days of receipt of the completed form and supporting documentation to determine whether an

Emergency Advance Payment is appropriate based on the information submitted by the

Claimant;"

(3) On or about August 23, 2010, Defendant GCCF, on its website, stated, "Upon a determination that the Claimant is eligible for an Emergency Advance Payment, a payment will be authorized within 24 hours;"

(4) Currently Defendant GCCF states, "Claims will be paid within 90 days after substantiation." According to Defendant GCCF, substantiation means "the claim has been received and reviewed by GCCF." This definition of substantiation allows a claim to be received and held "under review" indefinitely by Defendant GCCF. When Defendant GCCF finally "substantiates" the claim, the claimant is told he or she will be paid within 90 days.

144. Plaintiff Salvesen reasonably relied on Defendants' representation that his claim would be paid "quickly."

145. This reasonable reliance of Plaintiff Salvesen on Defendants' representation proximately caused the following injury to Plaintiffs: Due to the fact that Defendant GCCF denied Plaintiff Salvesen's claim after 274 days had passed since Plaintiff Salvesen presented a claim for damages to BP, Plaintiff Salvesen has suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other health and economic loss.

## COUNT VII
## UNJUST ENRICHMENT

146. Plaintiff Salvesen refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

147. As of the date of the filing of this Complaint, due to Defendants' intentional and systematic delay of payment of legitimate claims, approximately 328 days have passed

since Plaintiff Salvesen presented a claim for damages to BP.

148.  At all times material herein, Defendants claim the protocols under which Defendant GCCF operates are structured to be compliant with OPA and apply the standards of OPA.

149.  Pursuant to OPA, 33 U.S.C. § 2705(a), the responsible party or the responsible party's guarantor is liable to a claimant for interest on the amount paid in satisfaction of a claim. The period for which interest shall be paid is the period beginning on the 30th day following the date on which the claim is presented to the responsible party or guarantor and ending on the date on which the claim is paid.

150.  Defendants have been enriched by excessively delaying, and finally denying, the payment of the legitimate claim of Plaintiff Salvesen and by not having to pay the statutorily-mandated interest on the amount paid in satisfaction of the Final Payment claim of Plaintiff.

151.  Defendants' delay and denial of payment and associated intentional refusal to pay interest on the amount paid in satisfaction of the claim of Plaintiff Salvesen have allowed Defendants to save thousands of dollars in costs.

152.  As a result of limiting BP's liability by delaying and denying payment and by not paying interest on the amount paid in satisfaction of the claim of Plaintiff Salvesen, Defendant Feinberg, Defendant Green and Defendant Feinberg Rozen were enriched by BP by receiving a monthly payment for services which did not rise to the standards expected of their profession.

153.  Plaintiff has suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of profit, loss of business reputation, loss of livelihood, loss of income, and other health and economic loss due to Defendants' delay and denial of payment and intentional refusal to pay interest on any amount which would have been paid in satisfaction of

the claim of Plaintiff Salvesen.

154. Defendants lack any legal justification for violating the rights provided to Plaintiff Salvesen under OPA.

155. Under the circumstances described herein it would be inequitable for Defendants to retain the benefits of their actions without paying the value thereof to Plaintiff Salvesen.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Salvesen demands judgment against Defendants, jointly and severally, as follows:

(a) Economic and compensatory damages in amounts to be determined at trial;

(b) Punitive damages;

(c) Pre-judgment and post-judgment interest at the maximum rate allowable by law;

(d) Attorney's fees and costs of litigation;

(e) Such other and further relief as the Court may deem just and appropriate; and

(f) A trial by jury as to all Defendants on all issues so triable..

DATED: June 15, 2011

Respectfully submitted,

Brian J. Donovan
Attorney for Plaintiffs
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469